IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SONIA RUSSELL,<br><br>Plaintiff,<br><br>vs.<br><br>POSTMASTER GENERAL LOUIS DEJOY,<br><br>Defendant. | 8:22CV417<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant's Motion to Dismiss. (Filing No. 16). Defendant has moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.[1] For the reasons explained below, Defendant's motion will be granted.

**BACKGROUND**

Plaintiff is a 55-year-old, African American female, who works for the United States Postal Service. (Filing No. 1.) Plaintiff has been a limited duty employee with the postal service since a workplace injury on December 21, 2017. Following her injury, Plaintiff filed a claim with the Office of Workers' Compensation Programs ("OWCP").[2] According to Plaintiff, since the date of her injury, she has attended monthly doctor appointments and has provided updated CA-17 forms, which Plaintiff describes as "physician-issued duty status reports."[3] (Filing No. 21.)

---

[1] Although not specifically named, the United States seeks dismissal on behalf of its agency, the United States Postal Service. Louis DeJoy is the named defendant in his capacity as Postmaster General.

[2] The OWCP is the agency responsible for administering the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. 8101, *et seq*.

[3] CA-17 forms are used by the OWCP "to assess whether an employee who has suffered a work-related injury can be accommodated with limited duties that do not interfere with the employee's medical restrictions." *Smith v. U.S. Postal Serv.*, 36 F. App'x 440, 444 (Fed. Cir. 2002).

Plaintiff alleges that on April 28, 2018, she was to begin "a new bid Job in Manual 326 on the ground floor." (Filing No. 1.) She was on vacation at the time and did not begin the position until May 7, 2018. (Filing No. 1.) Plaintiff contends that while on vacation, she received notifications of "harassment and challenges" occurring in her absence. (Filing No. 21.) She maintains that postal service manager, Ed Newman ("Newman"), questioned her ability to work overtime and pressured her new supervisor for information. (Filing No. 21.)

Plaintiff claims that when she returned from vacation, her new supervisor, Derrick Moore ("Moore"), told her he was receiving harassing emails from Newman about limiting Plaintiff to working 8 hours per day. (Filing No. 1.) Moore called Newman to the office to explain the emails. (Filing No. 1.) Plaintiff contends that Newman was confrontational and yelled at Plaintiff, telling her she had to sign a new Modified Job Assignment form ("2499 form").[4] Plaintiff alleges she refused to sign the form because she had already signed a Modified Job Assignment form within the past 30 days and, according to Plaintiff, a Modified Job Assignment is not required to be signed every 30 days. (Filing No. 21.) Plaintiff alleges that she also asked for a job description for her new bid job in relation to the 2499, but Newman responded that he did not need to provide her one and told Moore if Plaintiff would not sign the form, he was to send her home. (Filing No. 1.) Newman then read the 2499 to Plaintiff and indicated that the form said she could only work 8 hours. (Filing No. 1.) Plaintiff contends that she then went to the union steward who met with Newman. (Filing No. 1.)

Plaintiff alleges Newman also directed her to obtain a new CA-17 form saying that she could work over 8 hours, even though she had already provided an updated form to her previous supervisor. (Filing No. 1; Filing No. 21.) Plaintiff contends Newman refused to accept Plaintiff's most recent CA-17 because the form was completed prior to her new assignment and did not specify the number of hours she could work within her restrictions. (Filing No. 1; Filing No. 21.) Plaintiff claims she obtained an updated CA-17 form, but Newman continued to assert that Plaintiff was acting against her physician's guidance. (Filing No. 1; Filing No. 21.) Plaintiff alleges she was treated differently than other limited duty employees because she was forced to provide a new CA-17 duty status form before she could work overtime. (Filing No. 1.) Plaintiff claims this was

---

[4] A 2499 form is a type of accommodation offered under FECA, that is offered to employees with work-related medical restrictions. *Dickens v. DeJoy*, 2:19CV-12045, 2021 WL 4310623, at *2 (E.D. Mich. Sept. 22, 2021).

2

"not required when she first assumed Limited Duty status on December 21, 2017." (Filing No. 21.)

Plaintiff further alleges that certain employees, supervisors and/or managers accessed and exchanged her workers' compensation forms and the CA-17 form. (Filing No. 1; Filing No. 21.) Plaintiff claims that one such employee contacted the Department of Labor regarding updated paperwork for Plaintiff's workers' compensation claim. (Filing No. 1.) She also alleges that Newman questioned her medical documentation and contacted an individual from the OWCP to discuss Plaintiff's CA-17. (Filing No. 1.) Plaintiff contends the OWCP has restricted her from working overtime due to Newman's allegations. (Filing No. 1.)

Plaintiff also alleges certain employees sent messages to other employees instructing them not to call Plaintiff to work overtime. (Filing No. 1; Filing No. 21.) Plaintiff contends these actions led to "a significant reduction in her overtime opportunities." (Filing No. 21.) Plaintiff asserts these actions also created a hostile work environment and that she was "continually harassed about [her] limited duty, request for union time and working overtime even though [she was] in a protected [equal employment opportunity] activity." (Filing No. 1.) Plaintiff maintains she was "falsely accused on multiple occasions, received unwarranted discipline, and endured harassment by members of management." (Filing No. 21.)

Plaintiff, proceeding *pro se*, filed this suit on December 5, 2022.[5] (Filing No. 1.) Plaintiff's Complaint references an array of claims, including: Title VII of the Civil Rights Act of 1964 (based on "race, color, gender, religion, national origin"); Age Discrimination in Employment Act ("ADEA"); Americans with Disabilities Act ("ADA"); Privacy Act; Rehabilitation Act; Health Insurance Portability and Accountability Act ("HIPAA"), and her "civil rights." (Filing No. 1.) Plaintiff's Complaint provides that "[t]he discriminatory conduct of which [she] complain[s] . . . includes [f]ailure to accommodate [her] disability, [u]nequal terms and conditions of [her] employment, retaliation, [v]iolation of HIPAA, [v]iolation of [c]ivil rights, Privacy Act, American Disabilities Act, [and the] Rehabilitation Act." (Filing No. 1.) The Complaint also lists her claims as "Disparate Treatment, Harassment, Physical Disability (Limited Duty), Title VII of the Civil

---

[5] Plaintiff previously filed an employment discrimination and retaliation action against Defendant in this district. The Court entered summary judgment in favor of Defendant in that case, dismissing Plaintiff's claims in their entirety. *Russell v. DeJoy*, No. 8:20CV533, 2023 WL 5620729 (D. Neb. Aug. 3, 2023). This decision was affirmed by the Eighth Circuit Court of Appeals. *Russell v. DeJoy*, No. 23-2968, 2024 WL 3062238 (8th Cir. June 20, 2024).

Rights Act, Age Discrimination, American with Disabilities Act, Rehabilitation Act while in a protected EEO." (Filing No. 1.)

## DISCUSSION

### 1. Pro Se Considerations

Pro se pleadings, such as those here, must be "liberally construed" and are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). Liberally construing a complaint means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id*. at 544 (quotation omitted). Nevertheless, a pro se complaint still must contain "specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). The court will not "assume facts that are not alleged," even if "an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

Importantly, when evaluating a motion to dismiss a pro se plaintiff's complaint, the Eighth Circuit Court of Appeals requires district courts to consider the allegations made in a complaint, as well as those contained in the plaintiff's response to the motion. *See Pratt v. Corrs. Corp. of Am.*, 124 F. App'x 465, 466 (8th Cir. 2005). Thus, in deciding the instant motion, the Court will look to those pleadings.

### 2. Jurisdiction – Federal Rule of Civil Procedure 12(b)(1)

Defendant first seeks to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). The court has "substantial" authority to determine whether it has jurisdiction. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, "the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Accordingly, "the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Branson*, 793 F.3d at 914. Here, Defendant is bringing a facial attack.

Liberally construed, Plaintiff alleges that certain postal service employees violated the Privacy Act and HIPAA by accessing, viewing, and then exchanging her workers' compensation forms and the CA-17. In particular, she appears to allege that Defendant violated these statutes by contacting the OWCP about her medical documentation and her ability to work overtime. Plaintiff alleges this contact with the OWCP resulted in her not being allowed to work overtime.

Taking Plaintiff's allegations at true, they cannot sustain a HIPAA claim. HIPAA does not create a private right of action as an underlying basis for a civil suit. *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 851 (8th Cir. 2020); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010). Thus, Plaintiff has not, and cannot, state a claim upon which relief can be granted and any claim that Plaintiff asserts under HIPAA must be dismissed.

Moreover, to the extent Plaintiff's Privacy Act claim alleges her workplace limitations have not been properly defined (such as her ability or inability to work overtime due to her medical conditions), it is preempted by the Federal Employees' Compensation Act ("FECA").[6] FECA is a workers' compensation statute for federal employees, which provides that "[t]he United States shall pay compensation . . . for the disability . . . of an employee resulting from personal injury sustained while in the performance of his duty[.]" 5 U.S.C. § 8102(a). The Secretary of Labor is authorized to administer and decide all questions arising under FECA and the Secretary's decisions as to coverage are not subject to judicial review. *See* 5 U.S.C. § 8128(b); 5 U.S.C. § 8145; 5 U.S.C. § 8149.

---

[6] According to Plaintiff, she filed a claim with the OWCP in connection with her workplace injury and received a partial schedule award settlement. (Filing No. 21.)

As recognized by the Eighth Circuit Court of Appeals, "FECA explicitly provides that it is the exclusive remedy for a federal employee injured on the job." *Griffin v. United States*, 703 F.2d 321, 322 (8th Cir. 1983). Where FECA furnishes an exclusive remedy, a district court lacks subject matter jurisdiction over a plaintiff's claims. *Pourier v. United States*, 138 F.3d 1267, 1268 (8th Cir. 1998). Therefore, to the degree Plaintiff is seeking redress under the Privacy Act for the injuries for which she previously sought to recover by filing a claim with the OWCP, they are precluded by FECA and this Court lacks jurisdiction. *See Scott v. U.S. Postal Service*, 258 Fed. App'x 333 (D.C. Cir. 2007). *See also Rogers v. U.S. Dept. of Labor*, 607 F. Supp. 697, 699 (N.D. Ca. 1985) (stating that the Privacy Act "may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions").

Plaintiff's ADA claim must also be dismissed for lack of subject matter jurisdiction. The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). However, the term "employer" does not include the United States or a corporation wholly owned by the government of the United States. 42 U.S.C. § 12111(5)(B)(i). A suit against a federal agency or against an officer of a federal agency in his or her official capacity, such as the case here, constitutes a suit against the United States, and is not permitted under the ADA. *Whaley v. United States*, 82 F. Supp. 2d 1060, 1061 (D. Neb. 2000). *See also Jordan v. Evans*, 404 F.Supp.2d 28, 30 (D.D.C. 2005) (finding that federal employee has no remedy for employment discrimination under the ADA). Therefore, Plaintiff's ADA claim must likewise be dismissed.

### 3.   Failure to State a Claim – Rule 12(b)(6)

Defendant also argues Plaintiff's Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court agrees. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (quotation omitted). Determining whether a complaint states a plausible claim for relief requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true threadbare recitals of the elements of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (internal quotation and citations omitted). Because Plaintiff has not pled facially plausible claims, they must be dismissed.

A.  **Privacy Act**

Plaintiff contends Defendant violated the Privacy Act by accessing and exchanging her CA-17 and workers' compensation forms with the OWCP. The Privacy Act generally prohibits the unauthorized release of medical records by a government agency. 5 U.S.C. § 552a. The Act states that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." *Id.* at § 552a(b).

To recover for a violation of the Privacy Act, Plaintiff must show: (1) Defendant disclosed protected information, (2) the information was retrieved from a system of records maintained by Defendant and (3) Defendant acted intentionally and willfully when releasing the information. 5 U.S.C. § 552a. Plaintiff must also show the violation had an adverse impact on her. 5 U.S.C. § 552a(g)(1)(D), (g)(4). *See also Wisdom v. Dept. of Hous. & Urban Dev.,* 713 F.2d 422, 424 (8th Cir. 1983).

Even assuming the entirety of Plaintiff's Privacy Act claim is not precluded by FECA, the claim nevertheless fails under Rule 12(b)(6). Plaintiff alleges she was adversely impacted by certain employees' disclosure of her workers' compensation and CA-17 documents to individuals at the OWCP because this disclosure resulted in her not being allowed to work overtime. However, there is no causal nexus between postal employees' discussion/exchange of the documents with the OWCP—the entity responsible for administering workers' compensation claims—and the

OWCP's determination of Plaintiff's ability to work overtime while on limited duty. In other words, the disclosure of documents to the OWCP did not result in the adverse consequence alleged by Plaintiff. Also, Plaintiff has not alleged the documents were retrieved from a system of records maintained by Defendant. Therefore, Plaintiff's Privacy Act claim will be dismissed.

### B.  Discrimination and Retaliation Claims

Plaintiff alleges discrimination under Title VII (based on race, color, gender, religion, national origin), the Rehabilitation Act, and the ADEA. She also broadly asserts she was subject to retaliation. For the reasons below, these claims will be dismissed.

#### i.  Title VII

Title VII makes it unlawful for an employer to discriminate against an employee based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e-16. To state a prima facie claim of discrimination, Plaintiff must allege facts showing that (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).

Plaintiff alleges she was treated differently than other limited duty employees because she was forced to provide a new CA-17 duty status form before she could work overtime. Plaintiff claims this was not required when she first assumed limited duty status. Plaintiff further contends she was required to sign a new 2499 form and was not provided a job description. Plaintiff then broadly alleges she "continually harassed about [her] limited duty, request for union time and working overtime even though [she was] in a protected [equal employment opportunity] activity." Plaintiff maintains she was "falsely accused on multiple occasions, received unwarranted discipline, and endured harassment by members of management."

Taking the facts alleged as true and making all reasonable inferences in favor of Plaintiff, she has failed to allege sufficient facts to state a plausible claim for discrimination. Plaintiff provides general assertions of actions she classifies as discriminatory. However, such conclusory statements do not suffice to survive a motion to dismiss. Significantly, Plaintiff has not even attempted to indicate that her perceived mistreatment was the result of her race, color, religion,

sex, or national origin. Even liberally construing the Complaint, Plaintiff's allegations do not plausibly give rise to an entitlement to relief.

### ii. Rehabilitation Act

The Rehabilitation Act provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a). To state a claim under the Rehabilitation Act, a plaintiff must show she was disabled, was "otherwise qualified," and was the victim of discrimination solely because of her disability. Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004). Discrimination under the Rehabilitation Act encompasses both disparate treatment because of disability and failure to provide reasonable accommodations to a qualified individual's known disability. Withers v. Johnson, 763 F.3d 998, 1003 (8th Cir. 2014). To establish a case of disability discrimination based on disparate treatment, "a plaintiff must show (1) that he or she was disabled; (2) that he or she was qualified to do the essential job functions with or without reasonable accommodation; and (3) that he or she suffered an adverse action due to his or her disability." Tomshack v. Wilkie, 584 F. Supp.2d 740, 751 (D.S.D. 2022) (quoting Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 921 (8th Cir. 2018)). To prevail on a failure-to-accommodate claim, "a plaintiff must demonstrate that: (1) she is disabled; (2) is 'otherwise qualified;' and (3) requested a plausibly reasonable accommodation." Sanchez v. Vilsack, 695 F.3d 1174, 1177 (10th Cir. 2012).

While not entirely clear, Plaintiff appears to assert both disparate treatment and failure to accommodate Rehabilitation Act claims. Regardless, even assuming Plaintiff's Rehabilitation Act claims are not precluded by FECA, neither are viable.[7] As for her disparate treatment claim, the only adverse action Plaintiff alleges is that she was not able to work overtime. However, Plaintiff's inability to work overtime was not caused by any action taken by Defendant. Rather, Plaintiff's allegations describe efforts by management to ensure that Defendant was complying with Plaintiff's limited duty status based on her earlier workplace injury and resulting restrictions. Also, to the extent Plaintiff is seeking relief under the Rehabilitation Act for failure to accommodate her

---

[7] The Eighth Circuit has held that a "frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision." Meester v. Runyon, 149 F.3d 855, 857 (8th Cir. 1998).

disability, Plaintiff has not disclosed any request for a reasonable accommodation, or denial of any such request to support such a claim. Therefore, Plaintiff's Rehabilitation Act claims will be dismissed.

### iii.     The ADEA

The ADEA protects individuals aged 40 and over by prohibiting employers from discriminating against them based on their age. 29 U.S.C. § 623(a); 29 U.S.C. § 633a(a). To set forth a prima facie claim of age discrimination, a plaintiff must establish that (1) she is over 40; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the class were treated more favorably. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010). "The hallmark of an ADEA disparate-treatment claim is intentional discrimination against the plaintiff on account of the plaintiff's age." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1331 (8th Cir. 1996). This requires proof that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176–78 (2009).

Plaintiff alleges that she was treated differently than other limited duty employees because she was forced to provide a new CA-17 duty status form before she could work overtime. She also alleges she was required to sign a new 2455 form and was not provided a new job description. What Plaintiff has not alleged, however, is that she was forced to do these things because of her age. She has not alleged that younger, similarly situated employees were treated more favorably or not required to do these things. Nor has Plaintiff plausibly alleged that the adverse employment action itself—inability to work overtime—was attributable to her age. Accordingly, Plaintiff's ADEA claim will be dismissed.

### iv.     Retaliation

Plaintiff's Complaint vaguely alleges she was the victim of retaliation. To establish a prima facie case of retaliation under Title VII and the ADEA, Plaintiff must show that she participated in a protected activity, that Defendant took an adverse employment action against her, and that a causal connection exists between the two. *See Lewis v. St. Cloud State University*, 467 F.3d 1133, 1138 (8th Cir. 2006).

In her response to the Motion to Dismiss, Plaintiff maintains her retaliation claim "is presently under consideration by the United States Court of Appeals for the Eighth Circuit." (Filing No. 21.) See *Russell v. DeJoy*, No. 8:20CV533, 2023 WL 5620729 (D. Neb. Aug. 3, 2023). As the factual basis for her retaliation claim, she outlined alleged instances of harassment and discriminatory treatment by postal employee Frank O'Connor (the employee who appears to have been at the heart of her other case), including: attempting to "write up" Plaintiff for overtime; harassing Plaintiff about the timing of lunch and breaks; incorrectly designating Plaintiff's sick leave on a particular date as leave without pay; mischaracterizing an incident where he grabbed Plaintiff's wrist; mishandling her Family Medical Leave Act and unscheduled days off; unfairly scheduling her to work with individuals who could not do their jobs effectively; denying her access to union stewards; scheduling her to work with individuals who made her uncomfortable; and creating a hostile work environment. (Filing No. 21.) She also contends Defendant failed to notify her about the results of an investigation. (Filing No. 21.) By Plaintiff's own admission, her retaliation claim asserted in this action is the same one that was previously addressed and rejected by the Eighth Circuit. Therefore, her retaliation claim will be dismissed as res judicata.[8] See *Professional Management Associates, Inc v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003) ("Under res judicata, a judgment on the merits in an earlier lawsuit bars a second suit involving the same parties based on the same cause of action.").

C. **Hostile Work Environment**

Liberally construed, Plaintiff alleges she was subject to a hostile work environment. The elements of a hostile-work-environment claim are that (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was the result of the plaintiff's membership in the protected group; and (4) the harassment was severe or pervasive enough to affect a term, condition, or privilege of the plaintiff's employment.[9] See *Watson v. McDonough*, 996 F.3d 850, 856 (8th Cir. 2021). There is a "high bar" for proving "severe or pervasive" conduct in the Eighth Circuit. *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535,

---

[8] Even if Plaintiff's retaliation claim were not precluded, the result would be the same. Plaintiff has not plausibly alleged that these alleged incidents of retaliatory behavior were the result of her participation in any protected activity.

[9] In *Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002), the Eighth Circuit assumed for purposes of evaluating a motion for summary judgment, that a hostile work environment claim exists under the Rehabilitation Act, and that such a claim would be modeled after a similar claim under Title VII.

538 (8th Cir. 2020). A hostile work environment claim must allege more "than a few isolated incidents." Blomker v. Jewell, 831 F.3d 1051, 1057 (8th Cir. 2016) (quotation omitted). To prevail, a plaintiff must experience severe and pervasive harassment, enough "to alter the conditions of [her] employment." Paskert, 950 F.3d at 538. The alleged harassment "must be so intimidating, offensive, or hostile that it poisoned the work environment." Blomker, 831 F.3d at 1057 (quotation omitted).

In evaluating hostile work environment claims, courts must "be alert for workplace behavior that does not rise to the level of actionable harassment." Id. at 1056-57 (quotation omitted). The "standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." Id. at 1057 (quotation omitted). Courts must "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Id. (quotation omitted).

Plaintiff cannot meet the demanding standard for a hostile environment claim. Plaintiff has not alleged any conduct that is sufficiently extreme. Plaintiff vaguely alleges she was "continually harassed about [her] limited duty, request for union time and working overtime even though [she was] in a protected [equal employment opportunity] activity." She claims she was "falsely accused on multiple occasions, received unwarranted discipline, and endured harassment by members of management." In her response to Defendant's motion, she also broadly outlined alleged acts of harassment by O'Conner (discussed above). What Plaintiff has not plausibility alleged, however, is that any of these alleged acts of harassment were attributable to her membership in a protected group or her disability, nor has she included allegations indicating the alleged harassment was so severe or pervasive that it impacted the conditions of her employment. At best, what Plaintiff describes are workplace conflicts or disagreements and isolated incidents of ordinary tribulations of the workplace. Even under the liberal pleading standards for pro se litigants, Plaintiff has failed to state a plausible claim. Therefore, Plaintiff's hostile work environment claim will be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Filing No. 16) is granted. Judgment will be entered by separate filing.

Dated this 18th day of December, 2024.

BY THE COURT:

/s/ Susan M. Bazis
Susan M. Bazis
United States District Judge